IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DELORES M. HERNANDEZ,**

    **Plaintiff,**

**v.**                                                                                                      **No. CIV 00-0623 LH/LCS**

**WILLIAM A. HALTER,**[1]
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 13), filed February 12, 2001. The Commissioner of Social Security issued a final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income. The United States Magistrate Judge, having considered the Motion, memoranda, administrative record, and applicable law, finds that the motion is well-taken and recommends that it be **GRANTED**.

### PROPOSED FINDINGS

    1.    Plaintiff, now fifty-four years old, filed her current applications for disability insurance benefits and supplemental security income on August 23, 1995. (R. at 170-75.) Plaintiff stipulated to an onset date of November 16, 1994, the date of denial of her previous applications. (Tr. 281-82.)[2]

---

[1] Effective January 20, 2001, William A. Halter was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. PRO. 25 (d), William A. Halter, Acting Commissioner of Social Security, is substituted for Kenneth S. Apfel, Commissioner of Social Security, as the defendant in this action.

[2] Plaintiff's previous applications for disability insurance benefits and supplemental security income were denied by the ALJ Cradock on November 16, 1994. (R. at 158-66.) Plaintiff did not appeal. ALJ Connor determined that the denial of those benefits was *res judicata*

At the time she filed for benefits, Plaintiff was forty-eight years old. (R. at 170-75.) She has a high school education and was previously employed as a zookeeper, janitor, and service agent-supervisor for a car rental agency. (R. at 212; 245; 251.)

2. Plaintiff's applications were denied at the initial level on November 2, 1995 (R. at 176-85), and at the reconsideration level on March 21, 1996. (R. at 193-97.) Plaintiff appealed the denial of her claim by filing a Request for Hearing by Administrative Law Judge (ALJ) on April 16, 1996. (R. at 201.) ALJ Connor held a hearing on June 18, 1996, at which Plaintiff appeared and was represented by counsel. (R. at 278.) Judge Connor issued a decision denying the applications at step four of the sequential evaluation process on August 8, 1996. (R. at 318-330.) After receiving additional evidence, the appeals counsel denied Plaintiff's request for review. (R. at 6-7.) Thereafter, Plaintiff timely sought judicial review. On March 29, 1999, the Honorable Edwin E. Mechem adopted the Analysis and Recommended Disposition of United States Magistrate Judge Richard L. Puglisi and remanded this matter to the Commissioner to reassess Plaintiff's claim at step four, apply the proper legal standards to that assessment, to adequately document that assessment, and proceed to step five if necessary.

3. On remand, ALJ Keohane held a hearing on November 15, 1999, at which Plaintiff and a vocational expert testified. (R. at 359.) ALJ Keohane issued his decision on May 14, 1998, analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). (R. at 313-16.) At the first three steps of the sequential evaluation process, ALJ Keohane adopted the findings of ALJ Connor,

---

as to her present applications. (R. at 321-26.) Plaintiff did not appeal ALJ Connor's *res judicata* determination.

specifically finding that Plaintiff had not engaged in substantial gainful activity since her amended onset date of November 16, 1994, that she had alleged impairments consisting of problems with her left knee, loss of grip in her hands, and low back pain. (R. at 313.) At step three, ALJ Keohane determined that the severity of her impairments had not met or equaled any of the impairments described in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599. (*Id.*)

   4. Significantly, ALJ Keohane assessed Plaintiff at less than credible; thus surmising that she had the residual functional capacity for at least a limited range of light work. (R. at 314-15.) At step four, ALJ Keohane decided that Plaintiff was unable to perform her past relevant work as a service agent supervisor at a rental car company. (R. at 315.) At step five, relying on the testimony of a vocational expert, the ALJ concluded that Plaintiff was not disabled because she could perform the jobs of gate guard, parking lot attendant, shipping and receiving clerk, and at the time she filed for benefits, could also perform the job of surveillance system monitor. (*Id.*)

   5. On January 21, 2000, Plaintiff filed a request for review of the ALJ's decision. (R. at 304-306.) On March 18, 2000, the Appeals Council denied the request for review. (R. at 302-303.) Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Plaintiff filed this action on May 2, 2000, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**Standard of Review**

   6. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F. 2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion."

*Andrade v. Secretary of Health and Human Svcs.*, 985 F. 2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F. 2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F. 2d 802, 805 (10th Cir. 1988).

7. In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F. 2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson v. Sullivan*, 987 F. 2d at 1487.

8. At the first four levels of the sequential evaluation process, the claimant must show that she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See id.*

**Administrative Record**

9. On December 4, 1994, Emmett Altman, M.D. examined Plaintiff at the request of the

Department of Vocational Rehabilitation. (R. at 239-240). Dr. Altman reported that Plaintiff complained of knee and low back pain. (*Id*.) Physical examination revealed a positive left McMurray's sign, indicating possible damage to the medial meniscus, and osteoarthritis of the lumbar spine. (R. at 239-40.) Dr. Altman noted that Plaintiff hoped to be trained in something less arduous than her previous occupation

      10.     On October 24, 1995, G.T. Davis, M.D. conducted a consultative examination. (R. at 241.) Dr. Davis documented palpable crepitation in both knees while squatting, limited lumbar range of motion, and tenderness with palpation of the medial joint line of the knee with a positive McMurray's sign. (R. at 243.) Dr. Davis felt that Plaintiff could have a torn meniscus or other disorder of the knee, and opined that Plaintiff should avoid heavy and repetitive lifting or bending, but that she could probably do some walking, standing and sitting. (*Id.*)

      11.     On March 9, 1996, Plaintiff slipped and fell from a standing position, striking her low back. (R. at 254.) On March 12, 1996, Plaintiff was treated at the University of New Mexico Hospital for muscle spasms and contusions related to the fall. (R. at 252-53.) Motrin and Flexeril were prescribed and the doctor advised Plaintiff to apply heat three times a day, obtain a professional massage, and follow up with her primary care physician. (*Id*.) On June 10, 1996, Plaintiff reported to a UNM Hospital physician that she had been unable to grip anything for six months, both knees were bothering her and she had low back pain. (R. at 256.)

      12.     On June 17, 1996, Plaintiff was evaluated at the UNM Hospital orthopedic clinic by Dr. Gregory Voit, M.D. (R. at 259-60.) Plaintiff described progressive pain in her hands, bilateral knee pain, low back pain, neck pain and shoulder pain. (*Id*.) Although Plaintiff had a full range of motion in her shoulders, elbows, wrists and the joints of her fingers, she was slightly stiff and

grimaced when going through the shoulder range of motion. (R. at 259.) Dr. Voit noted no swelling or thickening of her joints. (*Id*.) Review of x-rays revealed no evidence of fractures, dislocations or degenerative changes. (*Id*.) Dr. Voit's impression was non-specific bilateral hand pain, with minimal, non-specific findings on examination. (*Id*.) Dr. Voit recommended serologic testing. (*Id*.)

13. On July 1, 1996, Dr. Brian J. Robinson, M.D., of the UNM Orthopedic Clinic, saw Plaintiff for a follow up appointment. (R. at 262.) Plaintiff complained of bilateral hand, knuckle, knee, shoulder and cervical and lumbar spine pain. (*Id*.) Dr. Robinson noted that the serologic tests had been negative, except for a slightly elevated sedimentation rate, and that Plaintiff had a full range of motion in her wrists and shoulders. (*Id*.) Dr. Robinson diagnosed non-specific bilateral wrist pain, accompanied by multiple bilateral joint pain, with an unknown cause. (*Id*.) Dr. Robinson noted that the Plaintiff's pack a day smoking habit could be contributing to her pain symptoms and observed that she might benefit from consultation with a primary care physician. (*Id*.)

14. On February 27, 1997, Plaintiff presented to Dr. Tedman L. Vance, M.D., at the UNM Orthopedic Clinic, with complaints of progressive back and right leg pain. (R. at 271.) Plaintiff reported that her right leg pain had been worsening over the past three or four months. (*Id*.) She was able to heel and toe walk without difficulty. (*Id*.) Sensation was intact with some tingling in her first three toes on the right. (*Id*.) A February 16, 1997 MRI revealed a herniated nucleus pulposus at L5-S1 on the right side, with mild nerve impingement. (R. at 274.) Dr. Tedman recommended decompression and diskectomy at L5-S1. (R. at 271.) Plaintiff stated that she would think about it. (*Id*.)

15. On April 10, 1997, Dr. Dean Smith, M.D. of the UNM Orthopedic Clinic, followed up with Plaintiff. (R. at 274.) Plaintiff reported that she was feeling better, but still had back pain

upon prolonged sitting or standing in one position. (*Id.*) She had not worked in four years but was still able to participate in most activities of daily living. (*Id.*) Dr. Smith concurred with Plaintiff's plan to continue with non-operative treatment. (*Id.*) Plaintiff was shown William's flexion and stretching exercises and advised to follow up with her primary care physician, and the orthopedic clinic in six months. (*Id.*) Dr. Smith also recorded that Plaintiff was responding well with Flexeril, Motrin and Tylenol. (*Id.*)

16. On April 4, 1997, Dr. Altman examined Plaintiff and observed spasm in the lumbar musculature and about 30% range of motion on the left and right. (R. at 277.) Plaintiff had a positive sciatic stretch and her right ankle reflex was absent. (*Id.*) There was full stability and range of motion in both knees and no weakness or atrophy. (*Id.*) Dr. Altman concluded that Plaintiff had a herniated disk with radicular pain on the right side and rigidity in her back. (*Id.*)

17. At the November 15, 1999 hearing, Plaintiff testified that until 1993, she had been a working supervisor at a rental car company for many years. (R. at 264.) Plaintiff could no longer perform her past work because it entailed cleaning cars for eight hours a day. (R. at 366; 371.) The summer before the hearing, Plaintiff had tried to walk, but had to turn back after a block and half due to pain in her knees and back. (*Id.*) She was unable to sit for more than fifteen minutes without changing positions. (R. at 367.) Standing was painful. (R. at 372.) Her roommate and sister had to do Plaintiff's shopping. (*Id.*) Plaintiff testified that she could lift a maximum of five pounds.(R. at 367.) She did very little light house work. (R. at 373.) She had sold her truck because it had a standard transmission she was unable to depress the clutch. (*Id.*) Sometimes she would borrow a car to go to her doctor's appointments. (R. at 373.)

18. Pamela Bowen testified at the hearing as a vocational expert. (R. at 389.) ALJ

Keohane asked Ms. Bowen to assume a hypothetical person with Plaintiff's vocational profile, who could occasionally lift and carry ten pounds, with further inaudible paramaters. (R. at 392.) Ms. Bowen testified that such a person would be unable to perform Plaintiff's past relevant work, but could perform the jobs of gate tender, gate guard, furniture rental clerk, parking lot attendant, shipping and receiving weigher, and surveillance system monitor. (*Id.*)

19.     ALJ Keohane then asked Ms. Bowen to additionally assume that the hypothetical person would be further limited to sitting 15 minutes in an eight hour day, standing 15 minutes in an eight hour day, lifting and carrying five pounds, and walking about one hour out of an eight hour day. (R. at 393.) Ms. Bowen testified that such a person could perform the job of surveillance system monitor. (*Id.*)

**Discussion**

20.     In support of her Motion to Reverse and/or Remand for a Rehearing, Plaintiff argues that ALJ Keohane erred in analyzing her credibility, and erred in failing to consider the combined effects of her impairments.

21.     ALJ Keohane found that Plaintiff had symptom producing medical problems, but that she exaggerated her symptoms and functional limitations so that her testimony was not fully credible. (R. at 314.) While it is true that this Court generally defers to credibility determinations of the ALJ, such deference is not absolute. *Thompson v. Sullivan*, 987 F. 2d 1482, 1490 (10th Cir. 1993). In evaluating a claim of disabling pain, the appropriate analysis considers (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *Glass v. Shalala*, 43 F. 3d 1392, 1395 (10th Cir. 1994) (citing

*Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)).  The credibility finding was crucial in this case because it directly influenced ALJ Keohane's findings that Plaintiff retained the residual functional capacity for a limited range of light work and affected the hypothetical question posed to the vocational expert.

22.  In this case, ALJ Keohane determined that Plaintiff lacked credibility because of perceived inconsistencies regarding the timing of her Motrin dosages, side effects of medication, and her ability to perform household chores.  (R. at 314.)  The record establishes that Plaintiff's testimony with respect to her Motrin dosage was consistent with her medical records.  (R. at 271.)  Moreover, Plaintiff's testimony that her medication "sometimes" upset her stomach was not sufficiently inconsistent with her medical records so as to undermine her credibility.  (R. at 369.)  Moreover, Plaintiff descriptions of her ability to perform daily activities were broadly consistent throughout the record.  For instance, she stated that "I do very little cleaning, such as sweeping, mopping, vacuuming" and that she performed minimal household chores  (R. at 211; 217)  These statements were consistent with each other, the medical record and the hearing testimony.

23.  ALJ Keohane's failed to follow the *Luna* pain analysis and failed to link his credibility findings to substantial evidence of record.  (R. at 314.)  Thus, ALJ Keohane's credibility determination is not supported by substantial evidence. *Kepler v. Chater*, 68 F. 3d 387, 391-92 (10th Cir. 1995).  On remand, the ALJ should expressly follow the *Luna* pain analysis, reevaluate Plaintiff's credibility, and expressly link his credibility findings to the record.

24.  Plaintiff further contends that ALJ Keohane failed to consider her impairments in combination.  The record establishes that Plaintiff has a herniated disc, with nerve root impingement on the S1 nerve root, possible damage to her medial meniscus and osteoarthritis of the lumbar spine.

9

...
...
...
...
...

Although the decision states that ALJ Keohane considered the combination of Plaintiff's impairments, he did not explicitly analyze them. On remand, the ALJ should throughly and explicitly analyze the combination of Plaintiff's impairments.

25.     With respect to the credibility determination, the pain analysis, and consideration of the combination of Plaintiff's impairments, the ALJ did not apply correct legal standards and substantial evidence does not support his decision. Under these circumstances, the case should be remanded.

## RECOMMENDED DISPOSITION

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 13), filed February 12, 2001, be granted and that this matter be remanded to the Commissioner to allow the ALJ to throughly analyze Plaintiff's complaints of disabling pain, expressly follow the *Luna* pain analysis, reevaluate Plaintiff's credibility, link his credibility determination with specific evidence of record, and fully consider the combination of Plaintiff's impairments.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**